UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
TIMOTHY SWEENEY,

                Petitioner,

                                          **OPINION & ORDER**
                                          06-CV-0663 (SDF)

-against-

SUPERINTENDENT of the WATERTOWN
CORRECTIONAL FACILITY,

                Respondent.
----------------------------------------------------------X
FEUERSTEIN, J.

I.     Introduction

On January 29, 2004, a judgment of conviction was entered in the County of New York, Nassau County ("County Court") upon a jury verdict finding *pro se* petitioner Timothy Sweeney ("petitioner") guilty of grand larceny in the third degree (N.Y. Penal Law § 155.35) and imposition of sentence. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied and dismissed.

II.    Background

    A.     Factual Background

The following facts were taken from the underlying petition and the trial transcripts:

In April 2002, at the suggestion of his attorney, John Hibner, Michael Mockler ("Mockler") contacted petitioner, a mortgage broker, to discuss financing for a house that Mockler was interested in purchasing. (Tr. 187-88). Mockler and petitioner spoke

several times about mortgage rates, during which Mockler provided petitioner with detailed financial information, including the amount of cash that Mockler had at his disposal for the house purchase. (Tr. 188). In May 2002, Mockler obtained a lower interest rate from a different broker and advised petitioner that he no longer required petitioner's services. (Tr. 189).

On or about May 29, 2002, petitioner called Mockler and told him that he was putting together a group of individuals to invest in oil futures. (Tr. 224, 226). Petitioner told Mockler that if he invested thirty thousand dollars ($30,000), he would be guaranteed a return of thirty seven thousand five hundred dollars ($37,500) in thirty (30) days. (Tr. 189). Mockler agreed to make the investment. (Tr. 191-92).

On May 31, 2002, petitioner and Mockler met in the parking lot of Hibner's office in Garden City, Nassau County, and Mockler handed petitioner an envelope containing thirty thousand dollars ($30,000) in cash. (Tr. 192). Within a few days of this transaction, petitioner called Mockler and said that an additional investment of ten thousand dollars ($10,000) (making Mockler's total investment forty thousand dollars ($40,000)) would lead to a guaranteed return of fifty thousand dollars ($50,000) within thirty (30) days. (Tr. 193).

On June 7, 2002, petitioner and Mockler met at the Stewart Manor train station and Mockler handed over ten thousand dollars ($10,000) in cash. (Tr. 194, 198). Near the end of June, and continuing through November 2002, Mockler called petitioner continuously to inquire about the status of his investment. (Tr. 198-203, 212). After thirty (30) days, petitioner began fabricating various excuses to Mockler to explain the delay. (Tr. 199-203). In October 2002, petitioner sent Mockler a check for ten thousand

dollars ($10,000), which failed to clear because petitioner had insufficient funds in his account to cover the check and petitioner's bank had issued a "stop payment" order at his request. (Tr. 238, 241). On October 11, 2002, Mockler met with Investigator Edward Krayewski from the Nassau County District Attorney's office and, on the advice of his counsel, Steven Barnwell, began to tape his conversations with petitioner. (Tr. 229-30, 287).

On November 22, 2003, petitioner, accompanied by counsel, met with Investigator Krayewski. (Tr. 250). Petitioner claimed that Mockler voluntarily agreed to make a forty thousand dollar ($40,000) loan to petitioner's friend, Howard Mintz ("Mintz"), in exchange for a fifty thousand dollar ($50,000) return, to be paid out of Mintz's father's estate, which was pending in Surrogate's Court. (Tr. 251-53, 266-67). Subsequently, petitioner gave the forty thousand dollars ($40,000) to Mintz, out of which he received a total of eight thousand dollars ($8,000), as payment for an outstanding loan that he had provided to Mintz. (Tr. 252, 265-66, 299). Mintz used the rest of the forty thousand dollars ($40,000) to pay off gambling debts. (Tr. 268). Mockler never received repayment of the forty thousand dollars ($40,000). (Tr. 212).

B. Procedural History

On December 4, 2003, the second day of jury deliberation, the court received two (2) notes. The first, marked 10:12 a.m., declared that Andre Smith, Juror number ten (10) ("Juror 10"), was unable to "get past" Petitioner's testimony during cross-examination, "that [petitioner] offered to pay back the money to Mockler but the DA wouldn't let him." (Tr. 380). This testimony had been stricken from the record. (Tr.

312-15). Juror 10 was brought into the courtroom, reminded by the judge of the instructions concerning stricken testimony, and asked if he would be able to strike that testimony from his mind and render a decision based only upon the admissible evidence. (Tr. 380-81). Juror 10 replied that he could not. (Id.).

The second note, marked 10:45 a.m., requested the readback of Mintz's testimony concerning "when the money was given to [petitioner and] [t]estimony of [petitioner] in terms of how the money was given to him." (Tr. 382). The note further indicated that a readback would aid Juror 10 in rendering a decision. (Id.). The court asked Juror 10 if that was true, to which he replied, "Yes." (Id.). Then the court asked Juror 10 if he would be able to keep an open mind after hearing the readback. (Tr. 382). After Juror 10 agreed to keep an open mind, the other jurors were brought into the courtroom and a portion of the testimony was read back. (Tr. 383-84). When asked by the court if the readback answered his questions, Juror 10 replied, "[t]hat's not the part." (Tr. 384). At defense counsel's suggestion, the court sent the jurors back to the jury room with instructions to clarify what it was they were looking for. (Id.). After the jurors left the courtroom, defense counsel asserted that Juror 10 was grossly unqualified and should have been removed. (Tr. 387). Although the court did not agree with defense counsel's assertion that Juror 10 had unequivocally stated that he could not be fair and impartial, it asked if defense counsel would consent to his removal. (Tr. 384-88). Counsel said he would. (Id.). The court then asked whether defense counsel would consent to replacing Juror 10 with an alternate. (Tr. 388). In response, defense counsel requested time to discuss the matter with petitioner and petitioner's family. (Tr. 388-89). Then counsel

requested a mistrial. (Id.). The court stated that it would hold counsel's motions to remove Juror 10 and for a mistrial in abeyance. (Tr. 388-90).

At 11:30 a.m., the court received a third note, stating that the jury had reached a verdict. (Tr. 390-91). Petitioner was convicted of grand larceny in the third degree. (Tr. 391). Defense counsel made no mention of his motions to remove Juror 10 and for a mistrial, either before or after the verdict. (Tr. 391-93).

On January, 29, 2004, petitioner was adjudicated a second felony offender pursuant to New York Penal Law § 70.06. (S. 2-3). It is undisputed that the court noted that petitioner was previously informed that the court intended to impose a prison sentence of three and one-half (3½) to seven (7) years. Petitioner then produced a check in the amount of forty thousand dollars ($40,000), as full restitution to Mockler. Accordingly, the court agreed to adjourn the proceedings for one week and to consider a lesser sentence in exchange for the restitution of Mockler's funds. When petitioner's check failed to clear, the court stated that petitioner had "perpetrated a fraud upon the Court," and sentenced petitioner to an indeterminate term of imprisonment of three and one-half (3½) to seven (7) years. (S. 4-7).

Petitioner appealed his judgment of conviction to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department, on the grounds: (1) that the trial court erred in refusing to discharge Juror 10 as "grossly unqualified" to serve under New York Criminal Procedure Law (N.Y. C.P.L.) § 270.35; (2) that the evidence was legally insufficient to support petitioner's conviction; and (3) that the verdict was against the weight of the evidence. On March 21, 2005, the Second Department affirmed petitioner's conviction, holding (1) that the trial court did not abuse its discretion in

denying petitioner's motion to remove Juror 10, because the stricken testimony that he was seemingly unable to forget did not pertain to material evidence; (2) that petitioner's legal sufficiency claim was both procedurally barred and without merit; and (3) that the verdict was not against the weight of that evidence. See People v. Sweeney, 16 A.D.3d 602, 603, 792 N.Y.S.2d 149, 150 (App. Div. 2d Dep't. 2005).

Subsequently, petitioner filed a motion with the Appellate Division seeking (1) leave to reargue the appeal pursuant to New York Civil Procedure Laws and Rules (CPLR) § 2221, on the ground that the Second Department misread or misinterpreted two sentences taken from the discussion between the trial court and the parties concerning Juror 10's qualifications to continue to serve; or (2), alternatively, leave to appeal to the New York Court of Appeals. The Second Department denied the motion in an unreported decision and order dated April 27, 2005.

Petitioner then moved, in County Court, pursuant to N.Y. C.P.L. § 440.10, to vacate his conviction on the ground that the trial court's refusal to dismiss Juror 10 deprived him of a fair trial. On April 7, 2006, the County Court summarily denied petitioner's motion, holding that the motion was procedurally barred by N.Y. C.P.L. § 440.10(2)(a), because the claim had already been ruled upon by the Second Department on direct appeal. Petitioner did not seek leave to appeal from that determination.

On February 8, 2006, petitioner filed the instant petition for a writ of habeas corpus, in which he raises the following claims: (1) that the trial court erred in denying his motion to remove Juror 10 as "grossly unqualified" to serve; (2) that the proof of his guilt was not legally sufficient; and (3) that the verdict was against the weight of the evidence.

III. The AEDPA

The Anti Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, governs petitions of incarcerated state court defendants seeking federal habeas corpus relief.

A. Exhaustion

Prior to bringing a petition for habeas corpus relief in federal court, a petitioner "must exhaust the remedies available in state court or demonstrate that 'there is an absence of available State corrective process [or] [that] circumstances exist that render such process ineffective to protect the rights of the [prisoner].'" Fama v. Commissioner of Correctional Services, 235 F.3d 804, 808 (2d Cir. 2000) (citation omitted, insertions in original). Exhaustion requires that a petitioner fairly present to the highest state court "both the factual and the legal premises of the claim he asserts in federal court." Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir. 2003) (internal quotations and citation omitted).

Unexhausted claims should be dismissed, unless there is no longer a state forum available to a petitioner to present his constitutional claim, in which case the federal court shall deem the claim exhausted and deny the claim as if the state court had considered but denied the claim on the basis of a state procedural rule which the petitioner had failed to follow. Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994).

B. Standard of Review

Pursuant to 28 U.S.C. § 2254(d) an application for a writ of habeas corpus that has met the procedural prerequisites

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Adjudication on the merits' . . . [requires] a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001).

Once claims have been adjudicated on the merits, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); 28 U.S.C. § 2254(d)(1). Alternatively, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413, 120 S. Ct. 1495, 146 L. Ed. 2d 389; 28 U.S.C. § 2254(d)(1). Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must

8

also be unreasonable." Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001). Under the AEDPA, determination of the factual issues made by a state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U. S. C. § 2254(e)(1).

A federal habeas court need not engage in even this limited degree of review when the state court decision rests on independent and adequate state procedural grounds. Coleman, 501 U.S. at 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640. A habeas court is procedurally barred from review of such claims. This rule applies even where a state court reaches the merits of a petitioner's claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision) (emphasis in original). However, this rule is not without exception. Generally, a claim otherwise procedurally barred may be reviewed by a federal court in the event that a habeas petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640.

IV.   Analysis

    A.   Constitutional Right to a Fair Trial (Failure to Dismiss Juror 10)

Petitioner's claim that the trial court's denial of his motion to dismiss Juror 10 violated his Fourteenth Amendment due process rights and deprived him of a fair trial is

unexhausted. Before a federal habeas court can consider the merits of a federal claim, the petitioner must have fairly presented the same claim in the state courts; otherwise, the claim is unexhausted. See 28 U.S.C. § 2254(b), (c). Fair presentation of a federal claim requires that the prior state court was alerted to the federal nature of the claim raised. Baldwin v. Reese, 541 U.S. 27, 29, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004); See also Cox v. Miller, 296 F.3d 89, 99 (2d Cir. 2002). In his brief to the Second Department, petitioner failed to cite federal authority asserting his due process rights or to even allege that the failure to dismiss Juror 10 deprived him of a fair trial. Rather, the sole issue regarding Juror 10 raised by petitioner on appeal was whether "[J]uror number 10 [was] 'grossly unqualified' as defined by the law of New York State . . . ." (Petitioner's Brief on Appeal, Point I). Petitioner cited only New York case law to assert that the trial court abused its discretion by failing to discharge Juror 10 pursuant to N.Y. C.P.L. § 270.35. Petitioner characterizes his "grossly unqualified" claim as a Fourteenth Amendment claim for the first time in his petition for federal habeas review, although he continues to rely exclusively on New York case law. Since the Second Department was not alerted to the federal nature of petitioner's claim, this claim is unexhausted.

However, since there is no longer a state court in which petitioner can raise this claim, see N.Y. C.P.L. §§ 460.10, 460.15, 460.30; 22 N.Y. C.R.R. § 670.12(b), it is deemed exhausted, but is denied as procedurally defaulted. See Bossett, 41 F.3d at 829. See also Coleman, 501 U.S. at 732, 111 S. Ct. 2546, 115 L. Ed. 2d 640. Petitioner has failed to demonstrate either cause for his failure to properly present his federal claims in state court or prejudice that might result from a failure to review this claim, or that failure to consider this claim will result in a fundamental miscarriage of justice. To demonstrate

a fundamental miscarriage of justice, petitioner has the burden of proving that a constitutional violation probably led to his conviction and that he is actually innocent. See Murray v. Carrier, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). Therefore, this claim is dismissed as procedurally defaulted.

In any event, petitioner's claim is without merit. The trial court's finding of juror impartiality is entitled to a presumption of correctness. See 28 U.S.C. § 2254; Patton v. Yount, 467 U.S. 1025, 1036, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984). A federal habeas court can only overturn the trial court's finding of juror impartiality for manifest error. Patton, 467 U.S. at 1031, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (citing Irvin v. Dowd, 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961)).

In determining whether a sworn juror becomes grossly unqualified during the course of a trial, the court must "make a reasonably thorough inquiry" of the juror concerning his or her capacity to serve. See N.Y. C.P.L. § 270.35(2)(a). The standard for removing a sworn juror who is alleged to be "grossly unqualified" is met "when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict." People v. Buford, 69 N.Y.2d 290, 298, 506 N.E.2d 901, 905, 514 N.Y.S.2d 191, 195 (1987) (internal quotations and citation omitted).

In petitioner's motion for leave to reargue to the Appellate Division, Second Department, he claimed that the court had misinterpreted the trial court's interrogation of Juror 10. Specifically, petitioner argued that when Juror 10 said he would keep an open mind, he was addressing only the readback of Mintz's testimony, and not the question of

11

his capacity to remain impartial during deliberations. (See Petitioner's Affirmation in support of his Motion to Reargue at 2).

> The manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record. Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a *question of fact*, except in a clear case.

Patton, 467 U.S. at 1037, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (citing Reynolds v. United States, 98 U.S. 145, 156-57, 25 L. Ed. 244 (1879) (emphasis in original). Where, as here, there is an alleged ambiguity regarding Juror 10's response that he could remain impartial, the trial judge, who has rendered a decision based on his 270.35(2)(a) inquiry of the juror before him, must be accorded great discretion. The trial judge is in a superior position to adjudge the juror's qualifications to serve.

Moreover, during the trial judge's inquiry, Juror 10 stated that he would keep an open mind after indicating his inability to "get past" petitioner's stricken testimony. (Tr. 382). The trial judge then instructed the jury to continue deliberating, and advised them that in the event they needed further testimony read back, to send a note. (Tr. 385). The jury then returned with its verdict. (Tr. 391). Petitioner has failed to rebut the presumption that the trial court's retention of Juror 10 was correct. See e.g. Booker v. Girdich, 262 F. Supp. 2d 264, 269 (S.D.N.Y. 2003). Furthermore, "the Court is not persuaded that . . . [the juror's difficulty in forgetting the stricken testimony] would have improperly swayed the decision-making abilities of . . . [the] other jurors." Booker, 262 F. Supp. 2d at 269. The trial court did not commit manifest error and petitioner's claim is without merit.

12

B.  Legal Sufficiency Claim

Petitioner contends that the People failed to prove his guilt beyond a reasonable doubt because the evidence established only that the parties had agreed to a short-term loan with a usurious interest rate and that there was no evidence that petitioner intended to permanently appropriate the money to himself or to a third person. This claim was denied by the Second Department as unpreserved for appellate review pursuant to N.Y. C.P.L. § 270.35, and in the alternative, as being without merit. Sweeney, 16 A.D.3d at 603, 792 N.Y.S.2d at 150.

Although a legal sufficiency claim is based on federal due process principles, Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); see also Jackson v. Virginia, 443 U.S. 307, 314, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), where, as here, a state appellate court dismisses a petitioner's claim because it is both unpreserved and without merit, it is not amenable to federal habeas review. Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996). Petitioner's failure to preserve his legal sufficiency argument for appellate review pursuant to N.Y. C.P.L. § 470.05(2) presents an adequate and independent state ground for the Second Department's decision, thus precluding federal habeas review. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (citing Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989)).

Moreover, petitioner does not show cause for his procedural default of this claim or resulting prejudice from a failure to review this claim, and he does not "demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640. Accordingly, this claim is denied as procedurally defaulted.

In any event, petitioner's legal sufficiency claim is without merit. When considering the legal sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." Policano v. Herbert, 430 F.3d 82, 87 (2d Cir. 2005) (citing Fama, 235 F.3d at 811). Under New York law, a person is guilty of grand larceny in the third degree "when he steals property and when the value of the property exceeds three thousand dollars." N.Y. Penal Law § 155.35.

An applicant for federal habeas review carries a very heavy burden to rebut the legal sufficiency of his conviction by presenting clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Petitioner must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The court must draw all inferences from the evidence in favor of the prosecution and resolve all issues of credibility in favor of the fact-finder's verdict. See United States v. Jackson, 345 F.3d 59, 65 (2d Cir. 2003).

Although petitioner alleges that the forty thousand dollars ($40,000) was a usurious loan, and not the product of grand larceny, he fails to meet his burden of producing clear and convincing evidence to rebut the jury's verdict. "On a challenge to the sufficiency of the evidence, . . . we must take it as given that the jury chose not to believe [petitioner's] version of what . . . ." Mockler's forty thousand dollars ($40,000) represented. Einaugler v. Supreme Court of the State of New York, 109 F.3d 836, 840 n.2 (2d Cir. 1997). A federal court is not permitted to re-evaluate the sufficiency of conflicting testimony; it must defer to the state court's findings. See Huber v. Schriver, 140 F. Supp. 2d 265 (E.D.N.Y. 2001); Fagon v. Bara, 717 F. Supp. 976 (E.D.N.Y. 1989).

14

Since there was sufficient evidence that petitioner stole property with a value in excess of three thousand dollars ($3,000), petitioner's legal sufficiency claim is without merit.

C. Weight of the Evidence Claim

Petitioner's claim that the jury's verdict was against the weight of the evidence presented is exhausted, but is not cognizable on federal habeas review.

To receive a grant of his writ for habeas corpus, petitioner must present a federal question for review. 28 U.S.C. § 2254(a). A weight of the evidence claim, however, is purely grounded in state law. See N.Y. C.P.L. § 470.15(5). See also Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001). Accordingly, federal courts are precluded from considering this claim on habeas review. See 28 U.S.C. § 2254(a); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990). Thus, petitioner's claim that the verdict was against the weight of the evidence is denied as not cognizable on federal habeas review.

V. Conclusion

The petition for a writ of habeas corpus is denied and the proceeding is dismissed. Since petitioner has failed to make a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253. See also Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); Kellogg v. Strack, 269 F.3d 100, 104 (2d Cir. 2001); Luciadore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d. Cir. 2000). Petitioner has a right to seek a certificate of

15

appealability from the Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

The Clerk of the Court is directed to close this case.

SO ORDERED

/s/ Sandra J. Feuerstein
United State District Judge

Dated: July 27, 2007
      Central Islip, New York

Copies to:

Timothy Sweeney
# 04-R-2211
Wyoming Correctional Facility
PO Box 501
Attica, NY 14011-0501

Nassau County District Attorney's Office
262 Old Country Road
Mineola, New York 11501
Attn:   Margaret E. Mainusch, ADA